UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

LORI P.,

    Plaintiff,

v.      Case No. 2:19-cv-00193

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR AN ORDER REVERSING THE DECISION OF THE COMMISSIONER AND GRANTING THE COMMISSIONER'S MOTION TO AFFIRM**
(Docs. 15 & 16)

Plaintiff Lori Ann Pickett is a claimant for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Social Security Act ("SSA") and brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner (the "Commissioner") that she is not disabled.[1] (Doc. 15.) The Commissioner moves to affirm. (Doc. 16.) Plaintiff replied on July 16, 2020, and the Commissioner filed a sur-reply on July 20, 2020, at which time the court took the pending motions under advisement.

After her applications for DIB and SSI were denied initially and on reconsideration by the Social Security Administration, Administrative Law Judge ("ALJ") Tracy LaChance found Plaintiff was ineligible for benefits based on her

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

conclusion that Plaintiff can perform jobs that exist in significant numbers in the national economy and was therefore not disabled between the alleged onset date of May 27, 2016 through December 14, 2018, the date of her decision.

Plaintiff identifies four errors in the disability determination: (1) the ALJ erred at Step Two in finding that Plaintiff's depression and anxiety were not severe impairments; (2) the ALJ erred in weighing the medical opinions of the state agency consultants and Plaintiff's treating therapist; (3) the ALJ erred in adopting the testimony of the Vocational Expert ("VE") regarding the position of surveillance system monitoring and finding that a significant number of jobs exists in the national economy; and (4) the Appeals Council erred in not reversing the claim based upon the new and material evidence from Plaintiff's treating therapist. Plaintiff seeks a remand for the calculation of benefits.

Plaintiff is represented by Phyllis E. Rubenstein, Esq. The Commissioner is represented by Heather Sertial, Esq., and Special Assistant United States Attorneys Fergus J. Kaiser and Molly E. Carter.

## I.  Procedural History.

Plaintiff filed her initial applications for DIB and SSI on July 25, 2017, alleging a disability onset date of May 27, 2016 and identifying the following disabling conditions: depression, anxiety, panic attacks, and osteoarthritis in her knees and feet. Her claim was denied on October 17, 2017 and was denied upon reconsideration on December 22, 2017. Plaintiff timely filed a request for a hearing, which was held before ALJ LaChance via videoconference on November 14, 2018. Plaintiff appeared in person and was represented by counsel. Both Plaintiff and VE Ruth Baruch testified.

On December 14, 2018, ALJ LaChance issued an unfavorable decision. Plaintiff timely filed an administrative appeal. The Appeals Council denied review on September 18, 2019. As a result, the ALJ's disability determination stands as the Commissioner's final decision.

## II.  ALJ LaChance's December 14, 2018 Decision.

In order to receive DIB or SSI under the SSA, a claimant must be disabled on or

before the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (internal quotation marks omitted).

ALJ LaChance determined Plaintiff met the SSA's insured status requirements through December 31, 2021. At Step One, she found Plaintiff had not engaged in substantial gainful activity since May 27, 2016, the alleged onset date. At Step Two, she concluded Plaintiff had the following severe impairments: osteoarthritis, obesity, and substance abuse disorder. Although the ALJ noted that Plaintiff testified to ongoing problems related to leg ulcers and edema, she found this impairment was not severe because these issues were resolved with diuretics and compression stockings. The ALJ also found Plaintiff's medically determinable mental impairments of anxiety disorder and depression did not cause more than minimal limitations on her ability to perform basic work activities and were therefore non-severe.

At Step Three, ALJ LaChance found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. The ALJ considered Listing 1.02 but found that Plaintiff's arthritis did not result in an inability to ambulate effectively, Plaintiff could travel without companion assistance, and she did not require the use of a hand-held assistive device that limits the functioning of both upper extremities. The ALJ also noted that Plaintiff had the burden of proof at Step Three but did not argue that any of her conditions met or equaled any Listing.

At Step Four, ALJ LaChance determined Plaintiff had the RFC to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She is limited to occasional pushing/pulling with her left lower extremity. She is limited to frequent stooping, occasional balancing, and no kneeling, crouching, crawling or climbing ramps, stairs, ladders, ropes or scaffolds. She must avoid concentrated exposure to extreme heat, extreme cold, and excessive humidity. She is limited to simple tasks for two-hour blocks, with occasional change in work tasks.

(AR 119.)

In light of her RFC, the ALJ concluded Plaintiff could not perform her past relevant work as described and as performed generally in the economy, including her work as a threading machine feeder and an accounts payable clerk. Although Plaintiff was forty-three as of her alleged onset date, placing her in the "younger individual age 18-44" category as defined by the regulations, the ALJ noted that, since filing her applications, Plaintiff had changed age categories to "younger individual age 45-49" *Id.* at 125.

Considering Plaintiff's age, high school education, work experience, and RFC, ALJ LaChance determined at Step Five that jobs exist in significant numbers in the national economy which she could perform including surveillance system monitor, table worker, and touch-up inspector. As a result, ALJ LaChance concluded Plaintiff was not disabled from May 27, 2016 through December 14, 2018, the date of her decision.

4

## III. Conclusions of Law and Analysis.

### A. Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).

It is the Commissioner who resolves evidentiary conflicts and determines credibility issues, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

### B. Whether the ALJ Erred at Step Two in Finding Plaintiff's Depression and Anxiety Were Not Severe Impairments.

Plaintiff argues that ALJ LaChance erred at Step Two by determining that Plaintiff's anxiety and depression were not severe impairments. The Second Circuit has repeatedly held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre*, 758 F.3d at 151; *see also Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (agreeing with the Supreme Court and sister circuits that "Step Two may do no more than screen out *de minimis* claims") (citing *Bowen v. Yuckert*, 482 U.S. 137, 158

5

(1987) (O'Connor, J., concurring)). An impairment or combination of impairments is "severe" at Step Two if it "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). In contrast, an impairment is "not severe" if the medical evidence clearly establishes it has no more "than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities[.]" SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985); *accord* SSR 96-3p, 1996 WL 374181, at *1-2 (July 2, 1996); *see also James C. v. Comm'r of Soc. Sec.*, 2020 WL 103813, at *4 (D. Vt. Jan. 9, 2020) ("An impairment is 'not severe' when medical evidence establishes 'only a slight abnormality . . .[,] which would have no more than a minimal effect on [the claimant's] ability to work.'") (alterations in original) (quoting SSR 85-28, 1985 WL 56856, at *3).

Whether an impairment is "severe" also has a durational component. "Unless [a plaintiff's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least [twelve] months." 20 C.F.R. § 404.1509. "It is the [Plaintiff's] burden to show at step two that [s]he has a 'severe' impairment or combination of impairments[.]" *James C.*, 2020 WL 103813, at *4.

The ALJ found that Plaintiff had medically determinable impairments of anxiety disorder and depression but those impairments did not cause more than minimal limitations on her ability to perform basic mental work activities and were therefore non-severe. In support of her conclusion, the ALJ cited treatment notes showing that in November 2016, Plaintiff's anxiety was "under good control" (AR 801) and that although Plaintiff testified to an increase in panic and anxiety that caused her to be unable to drive very far, she drove to the administrative hearing, typically drives herself to her appointments, and enjoyed riding "on back roads with [her] car with no destination[.]" *Id.* at 393.

At her consultative examination with Suzanne Sitkowski, PhD, Plaintiff reported that she had a history of panic attacks which had caused her to visit the emergency room on two or three occasions, none of which had occurred in the previous two years, and she had a good response to Klonopin and Sertraline. She also denied having a depressed

6

mood and stated that she tries "to focus on the positive." (AR 884.) The ALJ noted that Dr. Sitkowski did not find that Plaintiff met the criteria for anxiety or depressive disorder. In finding Dr. Sitkowski's opinion persuasive, ALJ LaChance considered the four areas of mental functioning and found that Plaintiff had no more than mild limitations in each area. The ALJ also noted Plaintiff's reports that she was able to follow written instructions, could interact with her family and go shopping, enjoyed Sudoku and reading, was able to perform light housework, and could handle a checkbook and savings account. She further reported that her limitations regarding bathing and dressing were due to her physical pain, rather than mental health symptoms.

Although Plaintiff points out that she received diagnoses relating to her anxiety and depression impairments, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (internal quotation marks and citation omitted). While ALJ LaChance found that Plaintiff's anxiety and depression were not severe, she proceeded to consider those impairments in the remaining steps of the sequential disability analysis and included a limitation to simple tasks with only occasional changes in Plaintiff's RFC as a result.

Assuming *arguendo* that the ALJ erred in finding that these impairments were not severe, a remand is not warranted where the ALJ "identifies some severe impairments at Step [Two], and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non[-]severe[.]" *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 278 (W.D.N.Y. 2018) (second and third alterations in original) (quoting *Snyder v. Colvin*, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014)). Any error in finding these impairments were not severe was therefore harmless. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (holding ALJ's error in finding certain conditions were not severe at Step Two was harmless because impairments were "specifically considered" in "subsequent steps") (summary order); *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 297 (W.D.N.Y.

7

2016) ("Courts have held that error at [S]tep [T]wo in determining the severity of impairments is harmless if the ALJ finds at least one other severe impairment and continues through the sequence of the disability analysis because the non-severe impairments can later be considered at the RFC stage.") (collecting cases).

### C. Whether the ALJ Properly Weighed the Medical Opinion Evidence.

Plaintiff contends that the ALJ erred in finding the opinions of treating source Virginia Giles, MA, LCMHC, unpersuasive and finding the opinions of non-treating medical consultant Dr. Sitkowski and non-treating non-examining sources Howard Goldberg, PhD, Ellen Atkins, PhD, and Richard Hamersma, PhD, persuasive with regard to Plaintiff's claimed mental impairments of depression and anxiety.

The Social Security Administration recently revised the regulations concerning how it considers medical opinion evidence in disability determinations. For claims filed on or after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[s] or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (per curiam). Instead, an ALJ must consider each medical opinion or prior administrative finding in the record and evaluate its persuasiveness in accordance with five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including: (i) length of treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of treatment relationship, (v) examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See id.* § 404.1520c(c).

The revised regulations state that "the most important factors [an ALJ] consider[s]" when determining persuasiveness of a medical opinion are supportability and consistency. *Id.* § 404.1520c(b)(2). An ALJ must therefore articulate how he or she considered the supportability and consistency factors for a medical opinion, and may, but need not, address the remaining three factors. *Id.* If an ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the

8

record, the ALJ must articulate how he or she evaluated the remaining three factors. *Id.* § 404.1520c(b)(3).

### 1. Dr. Sitkowski and the State Agency Consultants.

In her October 13, 2017 disability evaluation, Dr. Sitkowski opined that Plaintiff would have no difficulty understanding, remembering, or carrying out instructions and was able to maintain routine schedule and attendance and get along with others, including supervisors, co-workers, and the public. In doing so, she credited Plaintiff's self-report that she was able to attend all scheduled appointments, manage a daily routine, has no problem getting along with others including authority figures, and "has never been fired or laid off from a job because of problems getting along with other people[.]" (AR 117.) She found that Plaintiff would be able to "negotiate the daily stressors of a workplace setting" and noted that, while Plaintiff "suffers from occasional panic attacks, she does not exhibit a significant maladaptive change in behavior related to the attacks, e.g. avoidance." (AR 885.) Dr. Sitkowski diagnosed Plaintiff with opioid use disorder in sustained remission, alcohol use disorder in sustained remission, and excoriation disorder.

At Step Four, the ALJ found Dr. Sitkowski's opinion persuasive because it was "supported by the objective evidence of record, including the normal mental status findings at the exam, with good eye contact, easily engaged in social discourse, normal speech, logical and goal-oriented thinking, full range of affect, with smiling and laughing, no suicidal or homicidal ideation, plan or intent, no hallucinations or delusions, average estimated intelligence and 30/30 on her [Mini Mental Status Examination]." (AR 123-24.) She noted that Dr. Sitkowski did not find that Plaintiff had severe symptoms that met the criteria for a diagnosis of a depressive or anxiety disorder, other than excoriation disorder. The ALJ found that Dr. Sitkowski's opinion was consistent with Plaintiff's

consistently normal mental status exams[2] and treatment notes describing improvements in Plaintiff's mental status as the result of counseling.[3]

ALJ LaChance further noted that Dr. Sitkowski's opinions were consistent with Plaintiff's reported independent daily routine, which included independent grooming and hygiene, managing her medications, shopping for food a few times per week, washing dishes and folding laundry, taking care of her cats, attending regular appointments on her own, reading, and doing puzzles. While Plaintiff's ability to perform daily activities is not dispositive of her ability to perform at a job, it was a proper factor for the ALJ to consider. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (holding that an ALJ "must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources") (internal quotation marks, alterations, and citation omitted); *Zerilla v. Comm'r of Soc. Sec.*, 2012 WL 3192634, at *4 (D. Vt. July 6, 2012) (finding that a plaintiff's ability to make her own meals, do laundry and other chores, use public transportation, shop for groceries, and appear appropriate and well-groomed for medical and counseling appointments were "proper factors for the ALJ to consider").

---

[2] *See, e.g.*, AR 549 (at February 23, 2017 examination by Jeffery Lourie, APRN, noting that Plaintiff was alert and oriented and had "Memory Intact/Normal Affect"); AR 607 (at November 2, 2016 examination by APRN Lourie, finding the same); AR 931 (at December 6, 2017 examination by Christopher J. Lukonis, MD, noting that Plaintiff was alert, had normal thought processes, normal thought content, good insight and judgment, and affect was "euthymic"); AR 1351 (at February 13, 2018 examination noting the same); AR 1522 (at November 1, 2018 examination by Dr. Lukonis, noting that Plaintiff was "alert, oriented, good eye contact, judgment and insight good, mood/affect full range, speech clear, thought process logical, goal directed."); AR 1526 (at October 4, 2018 examination with Dr. Lukonis, noting the same); AR 1541 (at November 13, 2018 examination by Emilija O. Florence, MD noting that Plaintiff was "cooperative with exam, good eye contact, alert, oriented, judgement and insight good, mood/affect full range.").

[3] *See, e.g.*, AR 971 (at October 26, 2017 examination by Dr. Lukonis, noting that Plaintiff described her anxiety as "horrible" but "[h]as elicited the support of her counselor Ginny with benefit."); AR 1371 (at January 18, 2018 examination by Dr. Lukonis, noting that Plaintiff found counseling "quite beneficial"); AR 1414 (at April 18, 2018 examination by Dr. Lukonis, noting Plaintiff's "anxiety is under good control."); AR 1526 (at October 4, 2018 examination by Dr. Lukonis, noting that Plaintiff described her weekly psychiatric counseling as a "great benefit" and that "[h]er anxiety is improved overall.").

10

Similarly, state agency consultants Drs. Goldberg, Atkins, and Hamersma opined that Plaintiff had no severe psychological impairments but had mild limitations in understanding, remembering or applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing herself. The ALJ acknowledged that the state agency consultants had not examined Plaintiff, but nonetheless found their opinions persuasive because they were supported by the objective medical evidence including "the many normal mental status exams" and consistent with Plaintiff's "relatively full and independent daily routine[.]" (AR 123.) The ALJ found that the state agency consultant's opinions were also consistent with the opinion of Dr. Sitkowski who found that Plaintiff scored 30/30 on her Mini Mental Status Examination and had no significant functional limitations in any area. Although Plaintiff contends that Dr. Hamersma only cited six treatment notes, "failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted).

Because the ALJ's determination that Dr. Sitkowski's and the state agency consultants' opinions were persuasive complies with 20 C.F.R. § 404.1520c(c) and is supported by substantial evidence, a remand is not warranted.

### 2. Ms. Giles.

Plaintiff's treating counselor, Ms. Giles, submitted three opinions regarding her mental health impairments.[4] In a September 30, 2017 letter, she opined that Plaintiff suffered from major depressive disorder, generalized anxiety disorder, and "continues to struggle with intermittent episodes of depression, anxiety, and cravings." (AR 880.) She further stated "I find it amazing that [Plaintiff] continues to function as well as she does. It is my opinion that the complexities and intensity of [Plaintiff]'s health and mental

---

[4] For the first time in her reply brief, Plaintiff argues that a fourth opinion, dated December 18, 2017, should have been considered by the ALJ because the Commissioner has a duty to fully develop the record. "[A]rguments like this which are raised for the first time in a reply brief are deemed waived." *Blake v. Colvin*, 2015 WL 3454736, at *6 (D. Vt. May 29, 2015) (citing *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010)). In any event, the fourth opinion does not dictate a different outcome because it merely reiterates Ms. Giles's opinion that Plaintiff suffers from anxiety and depression disorders.

11

health issues are unquestionably disabling at this time." *Id.* at 881. In a May 20, 2018 letter, Ms. Giles opined that Plaintiff "continue[d] to experience depression and anxiety" and "struggle[d] to complete daily tasks of keeping appointments and caring for herself." (AR 1397.) She noted that stressors related to Plaintiff's physical health and living situation exacerbate her depression and anxiety and that the combination of these factors made Plaintiff "incapable of gainful employment." *Id.*

On November 1, 2018, Ms. Giles submitted a Mental Impairment Questionnaire in which she diagnosed Plaintiff with Major Depressive Disorder, Generalized Anxiety Disorder, and Panic Disorder. She indicated that Plaintiff had none to mild limitations in understanding, remembering, or applying information and interacting with others but marked limitations in concentrating, persisting, maintenance of pace, and adapting or managing oneself. Ms. Giles further opined that Plaintiff could be expected to perform less than 80% as efficiently as an average worker and would likely be unable to complete an eight hour work day more than four days per month due to her impairments and her need for medical treatment.

The ALJ found that Ms. Giles's opinions were "not persuasive because [they are] not supported by the treatment records, and [are] inconsistent with the evidence of record as a whole[,]" citing treatment records that supported a conclusion that treatment and counseling permitted Plaintiff to adequately manage her mental health challenges. (AR 124.) ALJ LaChance noted that the opinions of Ms. Giles were also inconsistent with the opinions of Dr. Sitkowski and Plaintiff's own testimony regarding her activities of daily living and that an opinion that Plaintiff was "disabled" was "inherently neither valuable nor persuasive" because that conclusion is reserved for the Commissioner. *Id.*

While Plaintiff points to treatment notes in the record that support Ms. Giles's diagnosis of anxiety and depression, "whether there is substantial evidence supporting [Plaintiff]'s view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis omitted). In this case, "[b]ecause genuine conflicts in the medical evidence are for the Commissioner to resolve[,] the ALJ was entitled to choose

12

between properly submitted medical opinions." *Eichelberger v. Saul*, 2019 WL 4072752, at *3 (W.D.N.Y. Aug. 26, 2019) (internal quotation marks, alterations, and citation omitted). The ALJ discussed the factors of supportability and consistency in finding Ms. Giles's opinions unpersuasive. Because the ALJ's determination was supported by substantial evidence in the record, she did not err in weighing the medical opinion evidence.

> D. **Whether the ALJ Erred in Adopting the Testimony of the Vocational Expert Regarding Surveillance System Monitoring and in Finding that a Significant Number of Jobs Exist in the National Economy.**

Plaintiff contends that the ALJ erred in adopting the testimony of VE Baruch regarding surveillance system monitoring because the Dictionary of Occupational Titles ("DOT") indicates that this job requires a Reasoning Level of 3, which is inconsistent with the ALJ's finding that Plaintiff was limited to performing simple tasks. Social Security Ruling 00-4P states:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p, 2000 WL 1898704 (S.S.A.). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based [their] opinion,' . . . and [it] accurately reflect[s] the limitation and capabilities of the claimant involved[.]" *McIntyre*, 758 F.3d at 152. "ALJs are not required to rely on classifications in the DOT, and may instead rely on VE testimony, even if that testimony is inconsistent with the DOT." *Lovell v. Astrue*, 2013 WL 174886, at *8 (D. Vt. Jan. 16, 2013).

The ALJ found that Plaintiff was limited to "simple tasks for two-hour blocks, with occasional change in work tasks." (AR 119.) At Step Five, she found that Plaintiff could perform the job of surveillance system monitor based on the VE's testimony. The DOT indicates that this job requires a Reasoning Level of 3 which is defined as having

13

the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." Dictionary of Occupational Titles, 1991 WL 688702 (4th ed. 1991).

There is a circuit split regarding whether a person who is limited to performing simple and routine work is capable of performing Reasoning Level 3 jobs. *Compare Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that plaintiff's RFC limiting her to "simple and routine work tasks" was "inconsistent with the demands of level-three reasoning" required for the job of surveillance-system monitor and that this inconsistency required reversal and remand "to allow the ALJ to address the apparent conflict"), *and Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (finding an "apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning," and remanding because the failure to reconcile the apparent conflict was not harmless), *with Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (holding that Reasoning Level 3 was not inconsistent with ability to perform only "simple" work), *and Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (holding that plaintiff could perform jobs requiring a Reasoning Level of 3 despite "her inability to do complex work").

In the Second Circuit, courts have held that a job requiring Reasoning Level 3 is not inconsistent with a limitation to simple tasks. *See, e.g., Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 409 (D. Conn. 2012) (holding that "[t]he hypothetical limitation of only short, simple instructions is, therefore, not inconsistent with either jobs requiring GED level 2 or 3 reasoning"), *aff'd*, 515 F. App'x 32 (2d Cir. 2013); *Lovell*, 2013 WL 174886, at *8, 9 (observing that "many federal courts have found that a claimant who is limited to performing simple and routine work is capable of performing Reasoning Level 3 jobs" and finding no conflict between the ALJ's conclusion that plaintiff "was able to perform jobs involving one-to-three-step instructions and the ALJ's step-five determination that [plaintiff] could perform jobs requiring Reasoning Level 2 or 3") (collecting cases). Because courts in the Second Circuit do not find that a Reasoning Level 3 job is *per se*

14

inconsistent with simple and routine tasks, the ALJ did not err in finding that Plaintiff could perform the job of surveillance system monitor based on the VE's testimony.

Plaintiff further argues that the ALJ erred in finding that there were jobs existing in significant numbers in the national economy that she could perform. At Step Five, the ALJ found that Plaintiff could perform the jobs of surveillance system monitor, table worker, and touch-up inspector for a total of 13,400 jobs in the national economy. At Step Five, the Commissioner bears the burden of demonstrating there are a "significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre*, 758 F.3d at 150 (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). According to SSA regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b). In other words, "[t]he Commissioner need show only one job existing in the national economy" in significant numbers that Plaintiff can perform to find she is not disabled at Step Five. *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (summary order).

"[I]solated jobs that exist only in very limited numbers in relatively few locations" do not meet the regulatory definition of "work which exists in the national economy." 20 C.F.R. §§ 404.1566(b), 416.966(b). Courts in the Second Circuit "have generally held that what constitutes a 'significant' number is fairly minimal." *Roe v. Colvin*, 2015 WL 729684, at *7 (N.D.N.Y. Feb. 19, 2015) (quoting *Fox v. Comm'r of Soc. Sec.*, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)). 13,400 positions in the national economy satisfies this threshold. *See Sanchez v. Berryhill*, 336 F. Supp. 3d 174, 177 (W.D.N.Y. 2018) (finding that "numbers similar to those presented here – between 9,000 and 10,000 jobs – have typically been found to be sufficiently 'significant' to meet the Commissioner's burden") (collecting cases); *Kelly D. v. Saul*, 2019 WL 6683542, at *6 (N.D.N.Y. Dec. 6, 2019) (finding 9, 996 positions nationally to be a "significant number[] of jobs in the national economy").

15

> E. **Whether the Appeals Council Erred in Not Reversing Plaintiff's Claim Based Upon the New Evidence from Ms. Giles.**

Plaintiff argues that the case should be remanded because the new evidence of Ms. Giles's treatment notes submitted to the Appeals Council sufficiently alter the weight of the evidence to create a reasonable probability that the ALJ would have reached a different conclusion. "[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). "Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (quoting 20 C.F.R. § 404.970(b)). "When the Appeals Council denies review after considering new evidence, [the court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez*, 77 F.3d at 46.

If the Appeals Council denies a request for review, "the ALJ's decision, and not the Appeals Council's, is the final agency decision." *Lesterhuis*, 805 F.3d at 87. "The Appeals Council's reasoning for denying review therefore has no bearing on the court's review of the Commissioner's decision." *Jessica R. v. Berryhill*, 2019 WL 1379875, at *4 (D. Vt. Mar. 27, 2019). The issue that remains is "whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require" remand. *Canady v. Comm'r of Soc. Sec.*, 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4, 2017).

Ms. Giles's additional treatment notes provide support for her assessment of anxiety and depression disorders. In essence, Ms. Giles opines that the assessments of other consulting physicians create a misleadingly favorable impression of Plaintiff's mental health because Plaintiff concealed her actual condition with a positive attitude. Ms. Giles's opinion, however, does not alter her own treatment notes or the observations

16

made by other skilled professionals. Instead, she merely suggests Plaintiff's self-reports and presentations to these professionals were not reliable. This new evidence submitted to the Appeals Council does not alter the weight of the evidence so dramatically as to require remand.

## CONCLUSION

For the reasons stated above, the court DENIES Plaintiff's motion for an order reversing the decision of the Commissioner (Doc. 15) and GRANTS the Commissioner's motion to affirm (Doc. 16).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 31st day of March, 2021.

Christina Reiss, District Judge
United States District Court